LOZEAU DRURY LLP
Michael R. Lozeau (State Bar No. 142893)
Douglas J. Chermak (State Bar No. 233382)
        E-mail: doug@lozeaudrury.com
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

*Plaintiff's Additional Counsel Listed On Next Page*

BICK LAW LLP
Alan N. Bick (State Bar No. 151452)
        E-mail: abick@bicklawllp.com
520 Newport Center Drive, Suite 750
Newport Beach, CA 92660
Tel: (949) 432-3500
Fax: (949) 432-3494

Attorneys for Defendant
USA WASTE OF CALIFORNIA, INC.

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>USA WASTE OF CALIFORNIA, INC., a corporation,<br><br>              Defendant. | Case No. 2:17-cv-01646-CAS-KS<br><br>**[PROPOSED]** CONSENT DECREE<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

LOS ANGELES WATERKEEPER
Arthur Pugsley (State Bar No. 252200)
Melissa Kelly (State Bar No. 300817)
E-mail: arthur@lawaterkeeper.org
melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162
Fax: (310) 394-6178

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendant USA Waste of California, Inc. ("Defendant" or "USA Waste"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and ground waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, USA Waste is the lessee of real property and operator of a construction/demolition debris processing facility, located at 2424 East Olympic Boulevard in Los Angeles, California, hereinafter referred to by the Settling Parties as the "Downtown Diversion Facility";

**WHEREAS**, USA Waste is the lessee of real property and operator of a construction/demolition debris processing facility, located at 11616 Sheldon Street in Sun Valley, California, hereinafter referred to by the Settling Parties as the "East Valley Diversion Facility" (the Downtown Diversion Facility and the East Valley Diversion Facility are referred to collectively as the "Facilities");

**WHEREAS**, Waterkeeper has approximately 3,000 members who live and/or

recreate in and around the Los Angeles area waterbodies, including the Los Angeles River, the Tujunga Wash, San Pedro Bay, and the Pacific Ocean;

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, the Permit includes the following requirements for all permittees, including USA Waste: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on December 1, 2016, Waterkeeper served USA Waste, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board

("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice letter"), alleging violations of the Act and the Permit at the Facilities;

**WHEREAS**, on March 1, 2017, Waterkeeper filed a complaint against USA Waste in the United States District Court, Central District Court of California, entitled *Los Angeles Waterkeeper v. USA Waste of California, Inc.* (Case No. 2:17-cv-01646-CAS-KS); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facilities ("Complaint") based on the 60-Day Notice letter;

**WHEREAS**, Waterkeeper contends in its 60-Day Notice letter and Complaint that, among other things, USA Waste has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

**WHEREAS**, USA Waste denies all allegations set forth in the 60-Day Notice letter and Complaint relating to the Facilities;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of Waterkeeper's claims or any admission by USA Waste of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full Waterkeeper's allegations in the 60-Day Notice letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree

shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations took place is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.,* and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the

provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act at the Facilities.

## II.  COMMITMENTS OF USA WASTE

7.      In order to reduce or prevent pollutants associated with industrial activity from discharging via storm water to the waters of the United States, USA Waste shall implement reasonable and appropriate structural and non-structural BMPs, as required by the Permit, as described more fully below.

8.      **Maintenance of Implemented Storm Water Controls.**  USA Waste agrees that the Facilities shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

9.      **Structural Improvements to Storm Water Management Measures at the East Valley Diversion Facility.**  By December 1, 2017, USA Waste shall implement the following structural improvements to the storm water management measures at the East Valley Diversion Facility:

a.      USA Waste shall install curbing, a trench drain and sump at the front (West) portion of the facility, historically indicated as Discharge Point 1, to capture all storm water discharges.  This trench drain should capture discharges from the facility entrance.  USA Waste will pump this water through a pipe to the back portion of the facility.

b.      In the back portion of the East Valley Diversion Facility, USA Waste shall install a sump with an automatic pump ("sump pump") and expected

calculated capacity to meet an 85th percentile 24-hour storm, as determined from local, historical rainfall records, which will then tie into a closed system for dust suppression at the East Valley Diversion Facility.

      c.     USA Waste shall re-route the downspout in the eastern corner of the facility near the storage area such that any flows go toward the ground rather than the top of the building.

      d.     Within fourteen (14) days of the Effective Date, USA Waste shall e-mail Waterkeeper digital photographs confirming said improvements.

      10.   **Improvements to Housekeeping Measures at East Valley Diversion Facility.**  By December 1, 2017, USA Waste shall implement the following improvements to housekeeping measures at the East Valley Diversion Facility:

      a.     To improve management of potential pollutants from trucks entering and exiting the facility, USA Waste shall relocate the rumble strips to the inner part of the scales near the entrance/exit.

      b.     To improve the efficacy of sweeping at the facility, USA Waste shall smooth out with additional concrete or asphalt certain materially cracked areas of pavement one time.  These areas are marked on Exhibit A.

      c.     Within fourteen (14) days of the Effective Date, USA Waste shall e-mail Waterkeeper digital photographs confirming said improvements.

      11.   **Structural Improvements to Storm Water Management Measures at the Downtown Diversion Facility.**  By October 1, 2018, USA Waste shall implement the following structural improvements to storm water management measures at the

Downtown Diversion Facility; if any changes are made to the system prior to system commercial operation that are different than indicated herein, the system design shall still store a 2-year, 24-hour storm and treat stormwater flows between the 2-year, 24-hour storm and the 5-year, 24-hour storm.

a.     USA Waste shall install sumps or diversion structures, conveyance piping, and storage designed to convey and store up to the 2-year, 24-hour storm (calculated consistent with the Los Angeles County Drainage Manual).

b.     USA Waste shall install a treatment system that is designed to treat storm water flows between the 2-year, 24-hour storm and the 5-year, 24-hour storm.

c.     USA Waste shall install new sumps or diversion structures at each of the discharge locations.  The sumps or diversion structures will flow into storage tanks with discharge pumps.  The discharge pumps will convey the storm water to multiple connected aboveground storage tanks designed to provide a combined anticipated storage capacity of approximately 336,000 gallons.

d.     USA Waste will use stored storm water onsite for dust suppression.  Storm water amounts above the 2-year, 24-hour storm are designed to be treated and discharged offsite.  The treatment system capacity will be designed to treat up to 250 gallons per minute.  The treatment system will be comprised of a multi-stage filter system.

e.     Within fourteen (14) days of system commercial operation of the above improvements, USA Waste shall e-mail Waterkeeper digital photographs confirming said improvements.

12.  **Improvements to Housekeeping Measures at Downtown Diversion Facility.**  By December 1, 2017, USA Waste shall implement the following improvements to housekeeping measures at the Downtown Diversion Facility.

a.  USA Waste shall inspect the covered metal storage roof and make any necessary repairs.

b.  USA Waste shall repave or repair materially cracked or broken areas of pavement and concrete at the Downtown Diversion Facility one time, as shown as Exhibit B.

c.  Within fourteen (14) days of the Effective Date, USA Waste shall e-mail Waterkeeper digital photographs confirming said improvements.

13.  **Employee Training.**  Within sixty (60) days of the Effective Date, Defendant shall conduct employee training for employees who have responsibility for the implementation of any portion of the Facilities' SWPPP, including the Monitoring and Reporting Program ("M&RP"), or compliance with other terms of the Permit or Consent Decree, to reflect the new measures that are contained in this Consent Decree.

14.  **Amendment of SWPPP.**  Within thirty (30) days of the Effective Date for the East Valley Diversion Facility and within thirty (30) days of system commercial operation for the Downtown Diversion Facility, USA Waste shall make one amendment to each of the Facilities' SWPPPs to incorporate the improvements and best management practices set forth in this Consent Decree.  USA Waste shall ensure that all maps, tables, and text comply with the requirements of the Permit.

At a minimum, the SWPPP map of the East Valley Diversion Facility shall

contain the following improvements:

      a.      The arrows depicting the direction of surface flow shall reflect the correct flow paths throughout the facility.

      b.      The discharge points, if any, shall be corrected to reflect the current conditions.

      c.      Drainage Areas 2 and 3 shall be combined into one area.

      d.      The K-rail near the entrance shall be indicated on the map.

At a minimum, the SWPPP map of the Downtown Diversion Facility shall contain the following improvements:

      e.      The background of the map should be a more current aerial photograph that represents the actual conditions.

      f.      The discharge points shall be corrected to reflect only a single, discreet discharge point.

      g.      The depiction of the Cape Cod berms in the southwest corner of the facility shall be corrected to indicate their actual extent.

      h.      The red diesel should be identified as a fueling station.

USA Waste shall revise the Facilities' SWPPPs to describe the structural and non-structural BMPs, including details of the measures to be installed. A copy of the amended Facilities' SWPPPs shall be provided to Waterkeeper within ten (10) business days of becoming final and ready for submission to the Regional Board. USA Waste may satisfy this requirement by providing notice to Waterkeeper via e-mail that said amended Facilities' SWPPPs have been uploaded to SMARTS within

ten (10) business days of uploading said amended Facilities' SWPPPs. Waterkeeper shall provide comments, if any to USA Waste within thirty (30) days of receipt of the amended SWPPPs. USA Waste shall incorporate Waterkeeper's comments into the SWPPPs or shall explain in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments. Any disputes over the adequacy of the amended SWPPPs shall be resolved pursuant to the Dispute Resolution provision in Paragraph 29.

15. **Additional and Ongoing Revisions to SWPPP.** During the Term of the Consent Decree, USA Waste shall revise the SWPPP, including the M&RP, pursuant to the Permit, including if there are any changes in USA Waste's Facilities' operations that affect the quality of storm water discharges, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs resulting from an Action Plan, or the reduction of discharge points. USA Waste shall submit any revised SWPPP to Waterkeeper for review and comment if a significant revision has been made e.g., change or reduction of industrial discharge points, implementation of advanced BMPs, etc. consistent with the terms and timelines of Paragraph 14 above.

16. **Reports.** During the Term of this Consent Decree, USA Waste shall provide Waterkeeper with a copy of all documents submitted to the Regional Board or the State Board concerning the Facilities' storm water discharges, if any, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the Permit. Such documents and reports shall be mailed or

emailed to Waterkeeper contemporaneously with submission to such agency. Alternatively, to the extent that USA Waste submits such documents to the Regional Board or State Board via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS"), USA Waste may satisfy this requirement by providing notice to Waterkeeper via e-mail that said results have been uploaded to SMARTS within ten (10) business days of uploading said documents. However, all laboratory results for storm water discharge sampling at the Facilities must be directly provided to Waterkeeper via e-mail within ten (10) business days of receiving said results. Waterkeeper shall maintain any such documents or their contents that are not uploaded to SMARTS, or otherwise made public by Defendant, as confidential and shall not disclose such documents or their contents to any person or entity. However, this requirement shall not prevent the parties from utilizing said documents or their contents pursuant to any dispute concerning the compliance with this Consent Decree, initiated pursuant to the Dispute Resolution procedures set forth in this Consent Decree. In addition, to the extent that the parties wish to involve the Regional Board or State Board in the Dispute Resolution procedures set forth in this Consent Decree, the parties may share said sampling results, subject to a request for the sampling results to be treated as Confidential Business Information.

17. **Annual Site Inspections.** Up to three Waterkeeper representatives or consultants (including an attorney), may conduct one inspection at each of the Facilities each year that this Consent Decree is in effect that may include 1) an inspection of the storm water pollution prevention systems, including BMPs,

improvements, and industrial operations that come into contact with storm water; and 2) collection of storm water samples from a Qualifying Storm Event ("QSE") that results in a discharge (collectively "Site Inspection"). Site Inspections shall occur during normal business hours and Waterkeeper shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection during a wet weather event, and seventy-two (72) hours notice prior to a Site Inspection during dry weather. Notice will be provided by telephone and electronic mail to Catherine Riegle at (818) 252-3141. For planning purposes, Waterkeeper may contact Defendant to determine if Defendant anticipates that a predicted wet weather event will result in a discharge of stormwater from one or both of the Facilities during a QSE, as defined under the Permit. If the predicted weather event does not result in a discharge of stormwater during a QSE at one or both of the Facilities, Waterkeeper may conduct its inspection of the Facility without collecting a sample and shall have the option of returning on another date to collect its annual sample from a stormwater discharge during a QSE at the Facility. Waterkeeper shall only inspect each Facility once annually and collect samples once annually from a stormwater discharge during a QSE at each Facility. During the Site Inspection, Defendant shall allow Waterkeeper and/or its representatives access to the Facilities' SWPPPs, M&RP, storm water monitoring records, and non-privileged reports and data related to storm water monitoring at the Facilities. During a wet weather inspection that qualifies as a QSE under the Permit, Plaintiff may request that Defendant collect a sample of storm water discharge from the Facilities' designated discharge points referenced in its

SWPPP, to the extent that such discharges are occurring, and as required by the Permit. Defendant shall collect the sample and provide a split sample to Waterkeeper, if Waterkeeper provides applicable glassware or notice at the time the site inspection is noticed, for USA Waste to have applicable glassware onsite. Subject to any safety concerns, Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection pursuant to this paragraph, however photographs and video must be limited to the storm water system at each Facility, including BMPs, Improvements, and any industrial operations that contact storm water. If Waterkeeper takes photographs and/or video recording, Waterkeeper shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection. Waterkeeper agrees that all individuals who will participate in a Site Inspection will execute a waiver and release prior to the Site Inspection.

Waterkeeper agrees the photographs and/or video recordings shall not be made public and shall be maintained settlement confidential. However, this requirement shall not prevent the parties from utilizing said photos and/or video recordings pursuant to any dispute concerning the compliance with this Consent Decree, initiated pursuant to the Dispute Resolution procedures set forth in this Consent Decree. In addition, to the extent that the parties wish to involve the Regional Board or State Board in the Dispute Resolution procedures set forth in this Consent Decree, the parties may share said photos and/or video recordings, subject to a request for the

photos and/or video recordings to be treated as Confidential Business Information.

### III.   MEET AND CONFER ABOUT SAMPLING RESULTS

18.   **Action Plan Regarding Exceedance of Numeric Limitations**.

a.   Following completion of the structural BMPs at each Facility as set forth in this Consent Decree and through the end of the term of this Consent Decree, USA Waste shall analyze any storm water discharges it collects from the Facilities during QSEs for the contaminants set forth in Table 1 below.  To the extent that either the East Valley Diversion Facility or the Downtown Diversion Facility discharges any storm water during a QSE, if the Facility's storm water sampling results from a QSE during the 2017-2018, 2018-2019, or 2019-2020 reporting years show that any single contaminant has two or more exceedances of the numeric limitations in Table 1 at any of the storm water sampling locations in a single reporting year, USA Waste agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and implementing additional BMPs aimed at reducing levels observed in storm water samples.

**Table 1. Numeric Limitations.**[1]

| Contaminant | Numeric Limit |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.5-8.5 s.u. |
| Oil and Grease | 15 mg/L |
| Iron | 1.0 mg/L |
| Zinc | 0.120 mg/L* |
| Copper | 0.013 mg/L* |
| Lead | 0.065 mg/L* |
| Aluminum | 0.75 mg/L |
| Chemical Oxygen Demand | 120 mg/L |

      b.     In furtherance of that objective, in any one reporting year meeting III.18.a., USA Waste shall prepare a written statement ("Action Plan") that includes the following:

            i.  A discussion of any exceedance or exceedances of the numeric limitations;

           ii.  An explanation of the possible cause(s) and/or source(s) of any exceedance; and

---

[1] An * next to a Numeric Limit denotes a CTR Limit. The limits for PH and COD are from the Basin Plan. The remaining limits are EPA Benchmarks. CTR Limits are expressed as a function of total hardness in the water body based on the equations provided in Federal Register, Vol. 65, No. 97, May 18, 2000, and being hardness dependent will vary with the analyzed total hardness of the water body. The CTR Criterion Maximum levels expressed herein assume a total hardness of 100 mg/L.

       iii.  Identification of responsive BMPs that will be taken to improve the Facility's storm water management practices to further reduce the possibility of future exceedance(s).

  c.  Should an Action Plan be required, such Action Plan shall be e-mailed or sent via first class mail to Waterkeeper not later than July 30th of the reporting year.

  d.  The new BMPs pursuant to the Action Plan shall be implemented by the November 1 subsequent to the due date of each respective Action Plan, or the date indicated in the respective Action Plan, and extended as agreed by USA Waste and Waterkeeper, extension not to be unreasonably withheld.

19.   **Action Plan Review.**  Upon receipt of the Action Plan, Waterkeeper shall have thirty (30) days to provide USA Waste with comments. Within thirty (30) days of receipt of Waterkeeper's Action Plan comments, USA Waste shall revise its SWPPP and/or Monitoring & Reporting Plan to reflect the changes and /or additional BMPs as set forth in the Action Plan or shall explain in writing why any comment is not incorporated. If requested by Waterkeeper within thirty (30) days of receipt of such Action Plan, Waterkeeper and USA Waste shall meet and confer to discuss the contents of the Action Plan and the adequacy of proposed BMPs to improve the quality of the Facilities' storm water to levels at or below the numeric limitations. If requested by Waterkeeper within thirty (30) days of receipt of such Action Plan, Waterkeeper and USA Waste shall meet and confer and conduct a site inspection

within sixty (60) days after the due date of the Action Plan to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facilities' storm water to levels at or below the numeric limitations. If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Settling Parties may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraph 29 below. If the Settling Parties fail to reach an agreement on additional measures, Waterkeeper may bring a motion before the District Court consistent with Paragraph 29 below. The Parties may agree in writing to extend any dates contained in this paragraph in order to further this Paragraph's meet and confer procedure.

20. Any concurrence or failure to object by Waterkeeper with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by USA Waste shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facilities' storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the Permit.

## IV. MITIGATION, REIMBURSEMENT OF LITIGATION FEES AND COSTS, OVERSIGHT, AND STIPULATED PAYMENTS

21. **Mitigation Payment**. In recognition of the good faith efforts by USA Waste to comply with all aspects of the Permit and the Clean Water Act at the Facility, and in lieu of payment by USA Waste of any penalties, which USA Waste

expressly denies, but which Waterkeeper asserts may have been assessed in this action if it had been adjudicated adverse to USA Waste, the Parties agree that USA Waste will pay the sum of fifty thousand dollars ($50,000.00) to The River Project for environmentally beneficial projects in the Los Angeles River Watershed. Payment shall be provided to The River Project as follows: The River Project, 3912 Laurel Canyon #208, Studio City, CA 91604, Attn: Melanie Winter. Payment shall be made by USA Waste to the River Project within fifteen (15) calendar days of the Effective Date. USA Waste shall copy Waterkeeper with any correspondence and a copy of the check sent to The River Project.

22. **Reimbursement of Fees and Costs.** USA Waste shall reimburse Waterkeeper in the amount of seventy thousand dollars ($70,000) dollars to help defray Waterkeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facilities related to this Consent Decree and negotiating a resolution of this action. USA Waste shall tender said payment in the form of a single check, payable to "Los Angeles Waterkeeper" and delivered by certified mail to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401, within fifteen (15) days of the Effective Date.

23. **Compliance Monitoring Funds.** As reimbursement for Waterkeeper's future fees and costs that will be incurred in order for Waterkeeper to monitor USA Waste's compliance with this Consent Decree and/or to effectively meet and confer and evaluate storm water monitoring results for the Facilities, USA Waste agrees to

pay Waterkeeper the amount of twenty-one thousand five hundred dollars ($21,500) for its costs to be incurred in overseeing the implementation of this Consent Decree. USA Waste shall make payment to Waterkeeper within forty-five (45) calendar days of the Effective Date.  Payment by USA Waste to Waterkeeper shall be made as described in Paragraph 22.

24.    **Stipulated Payment for Missed Deadlines.** USA Waste shall make a one time stipulated payment of Six Hundred Dollars ($600.00) for each missed deadline included in this Consent Decree, not excused by Force Majeure or agreement by Waterkeeper and USA Waste. Payments for a missed deadline shall be payable to The River Project, with contact information set forth above in Paragraph 21, to be used to fund environmental activities that will benefit the Los Angeles River Watershed.  USA Waste shall provide Waterkeeper with a copy of such payment at the time it is made.  USA Waste shall make the Stipulated Payment within thirty (30) days of a missed deadline, unless Waterkeeper agreed in writing to an extension of that deadline. USA Waste shall provide Waterkeeper with a copy of such payment at the time it is made.

## V.    COMMITMENTS OF WATERKEEPER

25.    **Submission of Consent Decree to DOJ.**   Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Waterkeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence

from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## VI.   WAIVER, RELEASES AND COVENANTS NOT TO SUE

26.   In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from Waterkeeper's allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facilities up to and including the Termination Date of this Consent Decree.

27.   The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facilities up to and

including the Termination Date of this Consent Decree.

28. **No Admission.**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and USA Waste expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by USA Waste of any fact, finding, conclusion, issue of law, or violation of law. However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## VII.  BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

29. **Dispute Resolution.**  If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action.  The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph.  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District

Court.  In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party.  The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court.  The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

30.    **Force Majeure**.  USA Waste will notify Waterkeeper if timely implementation of USA Waste's respective duties under this Consent Decree becomes impossible due to circumstances beyond the control of USA Waste or its agents, and which could not have been reasonably foreseen and/or prevented by USA Waste's exercise of due diligence.  Any delays due to the USA Waste's respective failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree will not, in any event, be considered to be circumstances beyond USA Waste's control.  However, permit issuance and agency actions are beyond USA Waste's control.  Except in the case of any catastrophic event that precludes normal banking and funds transfers such as emergency closing of the Federal Reserve Banking system, financial inability to pay for Improvements will not, in any event, be considered to be circumstances beyond the USA Waste's control.

a.    If USA Waste claims impossibility, unless during a catastrophic or other event such as mail shutdown, it will notify Waterkeeper in writing within twenty

(20) days of the date that USA Waste discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree, or the date USA Waste should have known of the event or circumstance by the exercise of due diligence. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by USA Waste to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. USA Waste will adopt all reasonable measures to avoid and minimize such non-performance.

b. The Settling Parties will meet and confer in good faith concerning the non-performance and, if the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of USA Waste, due to circumstances beyond the control of USA Waste that could not have been reasonably foreseen and prevented by the exercise of due diligence by USA Waste, new performance deadlines will be established.

c. If Waterkeeper disagrees with USA Waste's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party may invoke the dispute resolution process described in Paragraph 29 of this Consent Decree. In such proceeding, USA Waste will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure

and the extent of any delay attributable to such circumstances.

## VIII.  **MISCELLANEOUS PROVISIONS**

31.  **Effective Date.**  The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

32.  **Term of Consent Decree.**   This Consent Decree shall terminate on December 21, 2020, or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to December 21, 2020, or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence.

33.  **Execution in Counterparts.**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

34.  **Facsimile Signatures.**  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

35.  **Construction.**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

36.  **Authority to Sign.**  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

37.  **Integrated Consent Decree.**  All Consent Decrees, covenants,

representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

38. **Severability.**  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

39. **Choice of Law.**  This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

40. **Full Settlement.**  This Consent Decree constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

41. **Negotiated Consent Decree.**  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

42. **Modification of the Consent Decree.**  This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

43. **Assignment.**  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

44. **Mailing of Documents to Waterkeeper/Notices/Correspondence.**
Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Waterkeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Los Angeles Waterkeeper:

Melissa Kelly
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
E-mail: melissa@lawaterkeeper.org

With copies sent to:

Douglas Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
E-mail: doug@lozeaudrury.com

Unless requested otherwise by USA Waste, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to USA Waste pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

USA Waste:

Michael Hammer
9081 Tujunga Ave.
Sun Valley, CA 91352
E-mail:  mhammer@wm.com

With copies sent to:

Catherine Riegle Finley, Esq.
9081 Tujunga Ave.
Sun Valley, CA 91352
E-mail:  CRiegle@wm.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

45.    If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

46.    The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

LOS ANGELES WATERKEEPER

Date: 10/20/17 , 2017

_____
Bruce Reznik
Executive Director
Los Angeles Waterkeeper


USA WASTE OF CALIFORNIA, INC.

Date: 10/23 , 2017

_____
Larry Metter
President-Southern California Area


Approved as to form:

LOZEAU DRURY LLP

Date: Oct. 23 , 2017

_____
Douglas Chermak
Attorneys for Los Angeles Waterkeeper


LOS ANGELES WATERKEEPER

Date: 10 / 20 , 2017

_____
Melissa Kelly
Attorney for Los Angeles Waterkeeper

1    BICK LAW LLP

2        Date: __Oct 25__, 2017

3        _____

4        Alan N. Bick

5        Attorney for USA Waste of California, Inc.

6

7

8

9    **IT IS SO ORDERED.**

10

11   Date: __December 19, 2017__

12                                        Honorable Christina A. Snyder
                                         United States District Judge
13                                       Central District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# Exhibit A
East Valley Diversion

**Legend**

◇ Approx. Property Boundary

◇ Concrete Repair Area

Sheldon St

Google Earth

© 2017 Google

200 ft

N



Exhibit B
Downtown Diversion

Legend

E Olympic Blvd
Approx. Property Boundary
Concrete Repair Area

Google Earth
© 2017 Google

300 ft